IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JOSHUA CLAY OLIVER,              *

     Plaintiff,            *

vs.                        *

                             *     CASE NO: 3:06-CV-110 (CDL)

                             *

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,   *
d/b/a THE UNIVERSITY OF GEORGIA,
AND MICHAEL F. ADAMS in his    *
official capacity as President
Of the University of Georgia,    *

     Defendants.           *

_____

O R D E R

    This case arises from the decision of a Hearing Panel of the University of Georgia recommending that Plaintiff Joshua Oliver be suspended for one year for providing false information on his transfer application for admission. Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 29). For the following reasons, the Court grants Defendants' Motion for Summary Judgment. However, the Court stays its ruling and judgment pending an appeal of this Order.

BACKGROUND

I.   **Plaintiff's Application and Alleged Code of Conduct Violations**

    In 2003, Plaintiff Joshua Oliver was charged with rape and aggravated assault with intent to rape. Plaintiff pleaded guilty under *North Carolina* v. *Alford*, 400 U.S. 25 (1970), to the aggravated

1

assault charge, and the trial court entered an order of *nolle prosequi* on the rape charge. Plaintiff was sentenced under Georgia's First Offender statute, O.C.G.A. § 42-8-60, to ten years probation. (Ex. E to Doc. 18, Request for Production of Documents [hereinafter "RFP"] #12 at 8-10.)

In early May of 2005, Plaintiff applied online for transfer admission to the University of Georgia ("UGA" or the "University"). The application required Plaintiff to answer "yes" or "no" to the following question:

> Have you ever been convicted of a crime other than a minor traffic offense, or are there any criminal charges now pending against you? . . . Convictions shall include: A finding of guilt by a judge or jury, a plea of guilty, or a plea of nolo contendere, irrespective of the pendency or availability of any appeal or application for collateral relief.

(*Id* at 17.) Following this question was a blank space for explaining an affirmative answer. Plaintiff was uncertain how to respond to this question, so he contacted Mark Wiggins, the attorney who had defended him on his criminal charges, for advice. After researching the issue, Wiggins informed Plaintiff that the correct answer to the application question in Plaintiff's case was "no."[1] (Hr'g Tr. 15:6-24, Sept. 26, 2006 [hereinafter Sept. Hr'g Tr.].) Plaintiff accordingly answered "no" to the question, and he was accepted as a

---

[1]O.C.G.A. § 42-8-62(a) states in relevant part: "Upon fulfillment of the terms of probation, upon release by the court prior to the termination of the period thereof, or upon release from confinement, the defendant shall be discharged without court adjudication of guilt . . . and the defendant shall not be considered to have a criminal conviction."

student on July 25, 2005.   (Ex. E to Doc. 18, RFP #12 at 19.)
Plaintiff paid tuition and registered for classes starting in Spring
2006, with the ultimate goal of obtaining a degree in International
Affairs.  Plaintiff petitioned for and was discharged from probation
pursuant to The First Offender Act on April 20, 2006. (*Id.* at 7.)

## II.  The Hearing and Appeals Process

On or about April 4, 2006, the UGA Police Department became
aware of Plaintiff's registration on the sex offender registry
maintained by the Georgia Bureau of Investigations ("GBI").[2]  The UGA
Police Department notified the Associate Dean of Students for
Judicial Programs, Kimberly Ellis.  Because it appeared that
Plaintiff misrepresented himself on his application for admission,
Associate Dean Ellis issued Plaintiff a letter of interim suspension
for alleged violations of two regulations found in the UGA Code of
Conduct: (1) "Regulation II(1) - Other Acts of Dishonesty -
Furnishing false information to any University official or office"
and (2) "Regulation II(3) - Other Acts of Dishonesty - Causing,
condoning, or encouraging the completion of any University record,
document, or form dishonestly." (Ex. E to Doc. 18, RFP #12 at 23.)
The letter indicated that Plaintiff appeared to be in violation of
these regulations because

> it has been reported that in May 2005 you[] completed your
> transfer application for readmission dishonestly by not

---

[2]Plaintiff contends that he was mistakenly listed on the registry
because he was a first offender sentenced prior to July 1, 2004.  Prior
to that date, first offenders were not subject to the registration
requirements of O.C.G.A. § 42-1-12.  *See* 2004 Ga. Laws Act 790.

providing information about an arrest and conviction for a
        sexual offense.  The conviction took place on February 7,
        2003.

(*Id.*)  On April 4, 2006, Defendant Michael Adams, president of UGA,

spoke about the incident during "Open Mic with Mike" night, stating

that "misrepresenting oneself on an application is a dismissible

fact. . . .  We're doing cross checks now on admissions," and "this

behavior is so unacceptable that we don't want them . . . as part of

the university community."[3]  (Hr'g Tr. 61:10-62:15, Nov. 17, 2006

[hereinafter Nov. Hr'g Tr.].)

        On April 12, 2006, the University Hearing Panel, consisting of

two student representatives and a faculty member, conducted a student

judiciary proceeding.  The evidence against Plaintiff consisted of

(1) a copy of Plaintiff's UGA admission application; (2) a printout

of the GBI sex offender registry listing Plaintiff's "conviction";[4]

and (3) a copy of the first offender statute, O.C.G.A. § 42-8-60.

(*See* Ex. E to Doc. 18, RFP #5 at 3.)  In addition, Plaintiff

presented (1) his own testimony; (2) the testimony of his attorney,

Mark Wiggins, who testified that he advised Plaintiff to answer "no"

---

        [3]The original comments were published in the online version of the
student newspaper, the *Red and Black*.  At the November hearing, President
Adams clarified his statement by noting that "them" was supposed to be
"him" and referred to Plaintiff.  (Nov. Hr'g Tr. 62:13-21.)  President
Adams also admitted that the word "behavior" referred both to Plaintiff's
alleged misrepresentation and his underlying conduct.  (*Id.* at 62:22-
63:9.)  In addition, Plaintiff alleges that Dr. Daugherty read this
article before the student hearing and before she denied Plaintiff's
appeal.

        [4]The word "conviction" appears to be highlighted on the printout
received by the Hearing Panel.

4

when Plaintiff asked him how to truthfully answer the application question;[5] and (3) a statement from the Honorable Steve C. Jones, which stated that in a hypothetical situation identical to Plaintiff's, the correct answer to the application under Georgia law was "no." The Panel concluded, by a preponderance of the evidence, that Plaintiff was in violation of Regulation II(1), furnishing false information on his application. The Panel stated,

> Specifically, you entered a plea of guilty under *Alford v. North Carolina*; and the university application inquires about a finding of guilty by a judge or jury, a plea of guilty, or a plea of nolo contendere. Thus, your situation is included under this definition requiring a response of yes.

(Nov. Hr'g Tr. 78:2-7.) With respect to Regulation II(3), however, the Panel found Plaintiff "not in violation, as the panel found no intent to deceive in [his] actions." (*Id.* at 78:10-12.) The only place the Panel's finding of "no intent to deceive" was recorded was in the audiotape of the Panel's proceeding, which served as the official record of the hearing.

Plaintiff appealed to the Assistant Vice-President for Student Life, Dr. Patricia Daugherty, who reviewed the evidence and affirmed the Panel's decision. Plaintiff next submitted an application for review to President Adams, who reviewed all evidence except the audiotape and declined to grant Plaintiff's request for appeal.

---

[5]Although Wiggins was present and testified as a witness at the hearing, he did not act in his capacity as Plaintiff's attorney throughout the hearing process, instead acting as Plaintiff's "advisor" in accordance with the rules governing judiciary proceedings.

Finally, Plaintiff appealed to Defendant the Board of Regents of the University System of Georgia ("the Board") who, on September 13, 2006, likewise declined further review of the Panel's decision. The Board's decision stood as the final and binding decision of the University.

In September of 2006, Plaintiff filed this case in the Superior Court of Clarke County. Defendants removed the case to federal court, and shortly thereafter, Plaintiff dismissed his federal claims without prejudice. The case was remanded back to the Superior Court of Clarke County. While the case was pending in Superior Court, that court issued a temporary restraining order permitting Plaintiff to remain enrolled at UGA and attend classes. In November of 2006, Defendants filed a motion to dismiss the state court action. Plaintiff, who had since received the audiotape containing the "no intent to deceive" finding, reasserted his federal claims. Defendants again removed the case to this Court.

Shortly after removal to federal court, Judge Wilbur Owens entered a preliminary injunction on December 22, 2006, preventing Defendants from enforcing Plaintiff's suspension. Surprisingly, Defendants never moved to modify or dissolve that preliminary injunction, nor did they aggressively pursue dismissal or summary judgment. Finally, on November 15, 2007, almost a year after the issuance of the preliminary injunction, Defendants filed their pending motion for summary judgment. The briefing was not completed on that motion until February 15, 2008, and a hearing was held on May

14, 2008. Now, after over a year of failing to aggressively push this matter toward resolution, Defendants urge that their motion be decided expeditiously because of their concern that the matter may become moot. During the time that this action has been pending, Plaintiff has continued to pay for and attend classes. He anticipates completing his degree at the end of the June 2008 short session, which is scheduled to conclude on July 2, 2008.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a

7

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

DISCUSSION

## I.  Section 1983 Claims

Plaintiff alleges that the Board and President Adams, in his official capacity, are liable for various constitutional violations pursuant to 42 U.S.C. § 1983.  Under this provision,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Plaintiff maintains that Defendants violated his substantive and procedural due process rights and his right to equal protection

8

guaranteed by the United States Constitution. Plaintiff asserts claims for both money damages and injunctive relief under § 1983. For the following reasons, Defendants are entitled to summary judgment as to Plaintiff's § 1983 claims.

A. Claims for Money Damages

Defendants first contend that they are entitled to summary judgment to the extent Plaintiff seeks money damages for alleged § 1983 violations because they are not "persons" subject to suit under § 1983. It is well-established that "a State is not a person within the meaning of § 1983," and it is therefore not amenable to suit under that provision. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). It is equally well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (internal citation omitted). Because President Adams is clearly a state official sued in his official capacity, he is not considered a "person" for purposes of Plaintiff's claim for money damages under § 1983. President Adams is therefore entitled to summary judgment to the extent that Plaintiff seeks to recover money damages under § 1983. *See, e.g., Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

Similarly, Plaintiff's claim for money damages against the Board must fail. In this case, "the Board is undeniably a state entity that was acting in its official capacity," and thus "the Board is not

9

a 'person' under [§ 1983]." *Carr v. Bd. of Regents of the Univ. Sys. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007). Because neither President Adams in his official capacity nor the Board are considered "persons" amenable to suit for money damages under § 1983, Defendants are entitled to summary judgment to the extent that Plaintiff seeks money damages for alleged § 1983 violations.

### B. Claims for Injunctive Relief

While neither the Board nor President Adams are considered "persons" in a § 1983 suit for money damages, "a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." *Edwards*, 49 F.3d at 1524; *accord Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Even though § 1983 permits such suits, Defendants contend that Plaintiff's claims for injunctive relief are nonetheless barred by principles of Eleventh Amendment immunity.

The Eleventh Amendment provides that

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens." *Williams v. Bd. of*

*Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007). Three limited exceptions to Eleventh Amendment immunity exist. First, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)). Second, "a party may sue the state if . . . Congress has validly abrogated the state's immunity." *Williams*, 477 F.3d at 1301 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). Third, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), permits a plaintiff to seek prospective injunctive relief against a state official in his official capacity for an alleged constitutional violation. *See, e.g., Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005).

Plaintiff in this case does not assert that Eleventh Amendment immunity was either waived or abrogated with respect to his § 1983 claims, and it further appears from the record that neither waiver nor abrogation occurred. *See, e.g., Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam) (citing *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits."); O.C.G.A. § 20-3-36 ("The applicability of the doctrine of sovereign immunity to the board of regents is reaffirmed, except to the extent that the General Assembly may expressly

provide.") Thus, the only possible way that Plaintiff's claims for injunctive relief may survive is if the doctrine of *Ex parte Young* applies.

>    1.    *Claims for Injunctive Relief against the Board*

The *Ex parte Young* exception provides that "official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." *Scott*, 405 F.3d at 1255. In other words, "the Eleventh Amendment does not prohibit a plaintiff from suing state officials in their official capacities for prospective injunctive relief and costs associated with that relief." *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989).

Because the Board itself is not a "state official" that can be sued in its "official capacity," the *Ex parte Young* exception does not apply to Plaintiff's claims for injunctive relief against the Board. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (internal citations omitted)). While Plaintiff may have been able to sue the individual Board members in their official capacities for injunctive relief, *see Will*, 491 U.S. at 71 n.10, the Court has denied Plaintiff's motion to amend his Complaint in this manner. *See* Order

Den. Mot. for Leave to File, Mar. 19, 2008.  Because the Board itself
is immune from suit, it is entitled to summary judgment on
Plaintiff's § 1983 claims.

> 2.   *Claims for Injunctive Relief against President Adams*

On the other hand, Plaintiff's claim against President Adams
merits closer inspection, as President Adams is clearly a "state
official" being sued in his "official capacity."   To determine
whether the *Young* exception applies, the Court "need only conduct a
'straightforward inquiry into whether [the] complaint alleges an
ongoing violation of federal law and seeks relief properly
characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv.
Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur
d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J.,
concurring in part and concurring in judgment)) (alteration in
original).  This inquiry "does not include an analysis of the merits
of the claim."  *Id.* at 646.  A "prayer for injunctive relief-that
state officials be restrained from enforcing an order in
contravention of controlling federal law—clearly satisfies [the
Court's] 'straightforward inquiry.'"  *Id.* at 645.

In addition to his prayer for interlocutory relief, Plaintiff
in this case seeks

> permanent injunctive relief preventing the enforcement and
> carrying out of  the Hearing Panel's decision . . . and
> sanction, and preventing the exclusion, suspension or
> expulsion of Plaintiff from classes and property at the
> University of Georgia . . . .

13

(Second Am. Compl. ¶ 93(d).)  Plaintiff also asserts that the Hearing Panel's decision violated his due process and equal protection rights.  Without delving into the merits of the case, it therefore appears that Plaintiff has met his burden of demonstrating that he is seeking at least some form of prospective relief for an alleged constitutional violation, and the *Ex parte Young* exception should apply.[6]  Therefore, Plaintiff's claim for injunctive relief against President Adams is not barred by the Eleventh Amendment.

Although the Eleventh Amendment does not bar Plaintiff's claim, the Court finds that Plaintiff has failed to establish an ongoing constitutional violation; therefore, President Adams is entitled to summary judgment on Plaintiff's claim.  Plaintiff alleges that President Adams violated his constitutionally-protected rights to procedural due process, substantive due process, and equal protection.  More specifically, Plaintiff contends that President

---

[6]Plaintiff also requests "[t]hat a declaratory judgment and equitable decree be granted declaring as a matter of law that Plaintiff's application to The University of Georgia was not dishonest and had no[] intent to deceive, and that an equitable decree be issued that there was no basis for the Hearing Panel's decision . . . and sanction denying Plaintiff enrollment and requiring re-submission of an application to attend The University of Georgia, and a decree reinstating him." (2d Am. Compl. ¶ 93(e).)  This request does not appear to be one for prospective relief, and the *Young* exception "is not so broad as to allow a federal court to award retroactive relief against the state officials." *Armstead v. Coler*, 914 F.2d 1464, 1468 (11th Cir. 1990). In addition, courts have indicated that "if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).  The facts of this case do not appear to "implicate[] special sovereignty issues." *See Coeur d'Alene Tribe*, 521 U.S. at 281 (finding that Eleventh Amendment immunity applied because the plaintiff's suit was "the functional equivalent of a quiet title action which implicates special sovereignty issues").

Adams should be liable for: (1) "prejudging the case and formally stating his opinion to the media on the day notification was formally sent to Plaintiff"; (2) "review[ing] materials that were not part of the formal Hearing Panel record before rendering his decision on the 'appeal'"; (3) failing to listen to the recording of the hearing indicating that the Hearing Panel found that Plaintiff had "no intent to deceive" prior to making his decision on appeal; (4) providing a summary to the Board "that included new and incorrect material" which encouraged the Board to deny Plaintiff's request for review; (5) expressing his intention that Plaintiff was no longer welcome in the UGA community; and (6) enforcing the Hearing Panel's arbitrary and capricious decision to suspend Plaintiff for one year. (Second Am. Compl. ¶¶ 4, 47-51, 57.) These actions, however, do not constitute a continuing violation of due process or equal protection.

i. PROCEDURAL DUE PROCESS

Plaintiff first alleges that he suffered deprivations of his procedural due process rights. This Circuit has described itself as "in the vanguard of the legal development of due process for students ever since *Dixon v. Alabama State Board of Education*," 294 F.2d 150 (5th Cir. 1961). *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976).[7] The *Dixon* court reasoned that "the right to remain at a public institution of higher learning in which the plaintiffs were

_____

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

15

students in good standing" was an important interest, and thus, "there must be some reasonable and constitutional ground for expulsion or the courts would have a duty to require reinstatement." *Dixon*, 294 F.2d at 157. The court concluded that "due process requires notice and some opportunity for hearing before students at a tax-supported college are expelled for misconduct." *Dixon*, 294 F.2d at 158. The court emphasized that "[t]he notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education." *Id.*. The court also determined that, in the context of a student disciplinary proceeding, the constitutionally-required opportunity to be heard did not need to rise to the level of "a full-dress judicial hearing, with the right to cross-examine witnesses." *Id.* at 159. Rather, "a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved." *Id.*

Plaintiff has failed to demonstrate that he was not afforded these measures. Associate Dean Ellis provided Plaintiff with notice that he was being placed on interim suspension for allegedly violating University Code of Conduct regulations II(1) and II(3). The letter specifically stated that these alleged violations stemmed from apparent inconsistencies on Plaintiff's application for readmission. (*See* Ex. E to Doc. 18, RFP #12 at 23 (informing

Plaintiff that it appeared that he "completed [his] transfer application for readmission dishonestly by not providing information about an arrest and conviction for a sexual offense. The conviction took place on February 7, 2003.").) Moreover, at the student judiciary hearing, Plaintiff took advantage of the opportunity to present his case to the Panel in some detail, presenting his own testimony and that of his "expert" witnesses, attorney Mark Wiggins and Judge Steve Jones. There is simply no evidence in the record establishing that Plaintiff was deprived of either notice which "contain[ed] a statement of the specific charges and grounds which, if proven, would justify expulsion" or "a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail." *Dixon*, 294 F.2d at 159.

Plaintiff's quarrel appears to be with the ultimate decision of the Hearing Panel, not the process by which the decision was reached.[8] Due process, however, cannot "ensure that the academic

---

[8]Plaintiff also had the opportunity to have this decision reviewed by Dr. Daugherty, President Adams, and the Board. Plaintiff contends that he was deprived of the right to a meaningful *appeal* because: (1) President Adams's comments on "Open Mic with Mike" night demonstrated that he was biased against Plaintiff and therefore not an impartial decision-maker; (2) the Hearing Panel's decision was only perfunctorily reviewed; and (3) Plaintiff was precluded from explaining or rebutting ex parte evidence on which President Adams and/or the Board may have based their decisions. Each of these alleged deficiencies occurred in the *appeals* process rather than in the initial student judiciary hearing. In fact, Plaintiff makes no contention that the judiciary hearing itself was somehow constitutionally defective. The Court finds that the initial judiciary hearing satisfies constitutional procedural due process requirements in that the hearing provided Plaintiff with adequate notice and opportunity to be heard. Thus, the Court need not address any potential procedural due process problems that occurred during UGA's internal appeals process.

disciplinary process is a 'totally accurate, unerring process.'" *Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987) (quoting *Goss v. Lopez*, 419 U.S. 565, 579-80 (1975)). Because the judiciary proceeding provided Plaintiff with reasonably specific and timely notice and a meaningful opportunity to be heard, Plaintiff has failed to demonstrate that he was deprived of procedural due process, and President Adams is entitled to summary judgment on Plaintiff's procedural due process claim.

ii.  SUBSTANTIVE DUE PROCESS

Plaintiff also argues that he "has a substantive due process right to be free from arbitrary and fundamentally unfair suspension from a public school." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 5 [hereinafter Pl.'s Resp.].) Plaintiff concedes that higher public education is not a fundamental right under traditional substantive due process jurisprudence. However, he contends that some constitutional protection is appropriate to ensure that common sense and fundamental fairness prevail in a school disciplinary proceeding, particularly in light of the severity of the sanction imposed in this case.[9]

Plaintiff submits that his substantive due process rights were violated because: (1) "the inconsistency of the Hearing Panel's

_____

[9]Plaintiff contends that he essentially faces permanent expulsion because President Adams expressed his opinion that Plaintiff was no longer welcome in the University community due to his alleged misrepresentation on his application as well as his underlying conviction. (Nov. Hr'g Tr. 61:10-62:15.) At a minimum, Plaintiff faces a one-year suspension.

18

decision on Regulation II(1) after making a finding of 'no intent to deceive', and the later rubberstamping 'process' that failed to catch this glaring issue, was arbitrary and capricious, as is kicking out a student for lying when he did not lie" (Second Am. Compl. ¶ 77(a)); (2) "[t]he University's application at issue is unconstitutionally vague and ambiguous" (*Id.* ¶ 77(b)); (3) "the regulation as applied itself violates the Notice provided Plaintiff (which stated it was an allegation of dishonesty)" (*Id.*); (4) "[t]he Notice of Violation and Hearing Panel's Decision alleged 'dishonesty' and required evidence and proof of dishonesty, and no proof of dishonesty was provided . . . by a preponderance of the evidence" (*Id.* ¶ 77(c)); (5) "Plaintiff's right to meaningful process and appeal was violated because . . . Plaintiff was denied his procedural and/or substantive due process right to an impartial decision-maker" in part because "President Adams was biased against Plaintiff, the facts, motivated by public pressure, and prejudged Plaintiff's case accordingly (*Id.* ¶¶ 77(e), (f)); (6) "[i]t is arbitrary and capricious state action for a state school to kick a student out for lying on an application when that very panel made a specific finding that the student did not lie" (*Id.* ¶ 77(h)); and (7) "[o]ther procedural irregularities occurred that compounded with the above so as to substantially prejudice Plaintiff's rights under the 14th Amendment." (*Id.* ¶ 77(I).)

As a preliminary matter, Plaintiff improperly conflates his substantive and procedural due process claims. Plaintiff does not appear to be "challenging the adequacy or fairness of the procedural *system* established" for expulsion hearings; rather, he claims that Defendants "failed to follow this system, and made a sham out of the system, *in [his] case*." *Lee v. Hutson*, 810 F.2d 1030, 1031 (11th Cir. 1987). As such, the majority of Plaintiff's claims appear to sound in procedural due process. *See id.*; *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (finding in an employment discrimination case that because the plaintiff's "only contentions are that the facially adequate procedure was biased against him and that the Board was preordained to find against him, regardless of the evidence" that the plaintiff's claim sounded in procedural due process only). The Eleventh Circuit has expressly rejected efforts "to combine all of the alleged procedural errors in an attempt to make out a substantive due process violation," *Lee*, 810 F.2d at 1033, and this Court rejects Plaintiff's effort to do the same.

The remainder of Plaintiff's substantive due process claims are likewise without merit. First, the Eleventh Circuit has held that the decision to suspend a student is an "executive decision." *See C.B. v. Driscoll*, 82 F.3d 383, 387 (11th Cir. 1996). "As an executive act, the suspension contravenes substantive due process rights only if, in the Supreme Court's words, the right affected is implicit in the concept of ordered liberty." *Id.* (internal quotation

marks and citation omitted).  Because "[t]he right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process . . . the 'right' to avoid school suspension may be abridged as long as proper procedural protections are afforded[.]" *Id.* (citations omitted).  The foregoing discussion reveals that Plaintiff was afforded constitutionally sufficient procedural protections, and therefore Plaintiff has no cognizable substantive due process claim.

In addition, the thrust of Plaintiff's procedurally-unrelated substantive due process claims is that the decision of the Hearing Panel was arbitrary and did not comport with fundamental principles of fairness because Plaintiff was suspended for an act of "dishonesty," and the Panel specifically found "no intent to deceive" in Plaintiff's actions.  In short, Plaintiff contends that it is constitutionally unreasonable, arbitrary, and capricious to suspend a student for lying when he did not, in fact, lie.  The resolution of these claims, therefore, appears to turn on whether or not the Hearing Panel and the subsequent reviewers of the decision interpreted UGA's regulations in a reasonable manner.

The U.S. Supreme Court has held that it is reversible error for a court to substitute its own interpretation of school board disciplinary rules for that of the school board itself.  *See Bd. of Educ. of Rogers, Ark. v. McCluskey*, 458 U.S. 966, 970 (1982) (per curiam).  In other words, "'§ 1983 does not extend the right to

relitigate in federal court evidentiary questions arising in school disciplinary proceedings *or the proper construction of school regulations.*'" *Id.* (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)); *Wood*, 420 U.S. at 326 ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion."). In *McCluskey*, however, the Supreme Court did not foreclose the *possibility* of a case in which the interpretation of a particular regulation is so extraordinarily unreasonable that a student's substantive due process rights may be implicated. *McCluskey*, 458 U.S. at 970 ("A case may be hypothesized in which a school board's interpretation of its rules is so extreme as to be a violation of due process . . . ."). This is not such a case.

There is testimony in the record indicating that school officials, including Dr. Daugherty and Associate Dean Ellis, believed that "it would not be right to kick someone out [of UGA] for deception and dishonesty if there was a finding that there was no deception or dishonesty[.]" (Nov. Hr'g Tr. 43:22-44:24 (testimony of Dr. Daugherty); *see also* Nov. Hr'g Tr. 29:18-20 (testimony of Dr. Daugherty indicating that "dishonesty is implicit in the six categories that are examples of the category other acts of dishonesty"); Sept. Hr'g Tr. 96:1-11 (testimony of Associate Dean Ellis indicating that producing wrong information, such as "2+2=5" on a math test is not a sanctionable offense because "it's not the

[provision of] mistaken information, it's the [provision of] dishonest information" that is sanctionable).)

University officials also testified, however, that they did not have trouble reconciling the Panel's decision because the applicable regulation prohibited providing "false" information, and Plaintiff arguably provided false information because he had, in fact, pleaded guilty to aggravated assault. (*See, e.g.,* Nov. Hr'g Tr. 24:20-25:6, Testimony of Dr. Daugherty.) Thus, it appears that reasonable minds could differ as to whether Plaintiff should have revealed his first offender plea in light of the fact that the application defined "conviction" as including "a plea of guilty." While the decision of the Hearing Panel may have relied upon inconsistent rationales, ignored the purpose of the first offender statute, and even lacked "wisdom," "justice," and "moderation,"[10] the Court cannot say that the Panel's interpretation of University rules is "so extreme as to be a violation of due process." *McCluskey*, 458 U.S. at 970. Accordingly, Plaintiff's substantive due process claims lack merit for this reason as well, and President Adams is entitled to summary judgment on these claims.

### iii. EQUAL PROTECTION

Finally, Plaintiff claims that he has "two equal protection arguments both developed by the evidence." (Pl.'s Resp. 10.)

---

[10]The diploma which Defendants seek to deny to Plaintiff would be adorned with the University seal, which boldly proclaims the University's foundational guiding principles of "Wisdom," "Justice," and "Moderation."

Plaintiff first alleges that his suspension was "fundamentally unfair and arbitrary" because the basis for the suspension was "honestly held *false* information." (*Id.*) In addition, Plaintiff alleges that it is "irrational and arbitrary [to] sanction Plaintiff under the guise of *false* information within 'other acts of dishonesty'" because Defendants have no knowledge how this classification affects other first offenders. (*Id.*) Plaintiff's equal protection claims must fail.

Although Plaintiff does not allege that he falls within a suspect class recognized by traditional equal protection jurisprudence, the Eleventh Circuit has held that "[e]qual protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. Rather, we have recognized any individual's right to be free from intentional discrimination at the hands of government officials." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313-14 (11th Cir. 2006). "To prevail on this traditional type of equal protection claim, basically a selective enforcement claim . . . Plaintiff[] must show (1) that [he was] treated differently from other similarly situated individuals, and (2) that Defendant[s] unequally applied a facially neutral [rule] for the purpose of discriminating against Plaintiff[]." *Id.* at 1314. Plaintiff has failed to meet this burden. Plaintiff directs the Court to no evidence in the record that establishes the existence of

similarly situated individuals.[11]   Accordingly, Plaintiff's equal

protection claim must fail, and President Adams is entitled to

summary judgment on this claim.

---

[11]The *Campbell* court also recognized "a newer trend in equal
protection law, 'a class of one claim' without a necessary showing of ill
will or discriminatory purpose." *Campbell*, 434 F.3d at 1314.  The court
explained that "the Equal Protection Clause is implicated in 'class of
one' claims 'where the plaintiff alleges that [he] has been intentionally
treated differently from others similarly situated and that there is no
rational basis for the difference in treatment.'" *Id.* (quoting *Village
of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  Although
the precise contours of a "class of one" claim have yet to be defined by
the Eleventh Circuit, it is clear that, at a minimum, Plaintiff must
demonstrate the existence of a similarly situated comparator. *See id.* at
1314 n.6.   Because Plaintiff has failed to do so, to the extent that
Plaintiff's submissions to the Court arguably give rise to a "class of
one" claim, Defendants are entitled to summary judgment.

## II.  Section 1988 Claim

Plaintiff makes a claim for attorney's fees pursuant to 42 U.S.C. § 1988, which provides that a "prevailing" party in an action to enforce § 1983 may be awarded such fees.  Because the Court has granted Defendants' Motions for Summary Judgment as to each of Plaintiff's § 1983 claims, Plaintiff is not the prevailing party. Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1988 claim.

## III.   Stay of the Court's Order Pending Appeal

The Court's ruling today disposes of all of the claims in this action and results in a final judgment in favor of Defendants. Typically, this would automatically cause the previously issued preliminary injunction to be dissolved.  Without the restrictions of that preliminary injunction, UGA would be free to suspend Plaintiff immediately just as he approaches the academic finish line. Plaintiff's pursuit of his education would be completely disrupted with no real opportunity for appellate review prior to the disruption.  Anticipating this possibility, Plaintiff moved at the May 14, 2008 hearing on Defendants' Motion for Summary Judgment that the Court stay its forthcoming Order pending appeal to the Eleventh Circuit.  For the following reasons, the Court grants  Plaintiff's motion and stays the application of this Order pending an appeal of today's Order.  Accordingly, the previously issued preliminary

injunction shall remain in effect until dissolved or modified by the
Court of Appeals or this Court.

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an
appeal is pending from an interlocutory order or final judgment that
grants, dissolves, or denies an injunction, the court may suspend,
modify, restore, or grant an injunction on terms for bond or other
terms that secure the opposing party's rights."  Since the granting
of Defendants' Motion for Summary Judgment would ordinarily dissolve
the previously-granted preliminary injunction, the Court must examine
the following factors to determine whether to stay its Order pending
appeal, thus staying the dissolution of the injunction:

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where
> the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[12]  These factors
"cannot be reduced to a set of rigid rules" and "contemplate
individualized judgments in each case."  *Id.*; *cf. Garcia-Mir v.
Meese*, 781 F.2d 1450, 1454 (11th Cir. 1986) (finding that because
party seeking stay had not "persuaded [the court] that the
possibility of error . . . [was] so high as to constitute clear error
suggesting probable likelihood of success on appeal," the party "may

---

[12]The Supreme Court noted that "[d]ifferent Rules of Procedure govern
the power of district courts and courts of appeals to stay an order
pending appeal."  *Hilton*, 481 U.S. at 776 (citing Fed. R. Civ. P. 62(c);
Fed. R. App. P. 8(a)).  "Under both Rules, however, the factors regulating
the issuance of a stay are generally the same[.]"  *Id.*

have the relief it [sought] . . . only if the other three 'equities' tend strongly in its favor"); *Providence Journal Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979) ("Where, as here, the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay.")

As the foregoing Order indicates, the Court finds that Plaintiff has not demonstrated a high probability of success on the merits. Nevertheless, under the unique circumstances of this case, the Court finds that the balance of the equities favors the issuance of a stay. Plaintiff will suffer irreparable injury if the preliminary injunction is now dissolved and the Hearing Panel's sanction is given effect. Plaintiff has but one class and a matter of weeks before he will complete his course of study. At a minimum, the terms of Plaintiff's sanction require that he reapply for admission after one year, and there is at least some evidence that he may not be eligible for readmission based upon his previous first offender plea. (Nov. Hr'g Tr. 61:10-62:15 (testimony of President Adams indicating that Plaintiff is not welcome in the University community because of his alleged misrepresentation as well as the underlying conviction).)

On the other side of the scale, little evidence exists that Defendants will suffer irreparable injury if the current status quo is maintained. The record contains no credible evidence whatsoever

28

indicating that Plaintiff is a threat to the University community. He does "not presently reside on The University of Georgia campus or student housing, and [has] no intent to do so." (Pl.'s Aff. ¶ 11, Jan. 29, 2008.) Finally, the Court finds that absent any potential threat of harm posed by Plaintiff, the public has an interest—expressed by the Georgia legislature—in ensuring that first offender treatment "completely exonerate[s] the defendant of any criminal purpose and [does] not affect any of his or her civil rights or liberties." O.C.G.A. § 42-8-62; *see also Davis v. State*, 269 Ga. 276, 277, 496 S.E.2d 699, 702 (1998) ("The underlying humanitarian purpose of the first offender statutes is to protect the first offender from the stigma of having a criminal record until an adjudication of guilt has been entered with regard to the crime for which the defendant was given first offender treatment." (internal quotation marks and citation omitted)).[13]

The Court understands Defendants' concerns that by maintaining the preliminary injunction, the controversy could become moot if the Court of Appeals does not render a decision on the appeal prior to July 2, 2008, the date that Plaintiff is anticipated to complete his degree requirements. While Defendants' concerns are not frivolous, they are partially self-inflicted. Plaintiff has been paying tuition and attending UGA under a preliminary injunction since late 2006.

---

[13]Although certainly not unprecedented, the State of Georgia appears to be in conflict with itself. The State University seeks to deny admission based upon a "first offender's" failure to disclose conduct that the State Legislature arguably concludes need not be disclosed.

Despite the fact that Judge Owens' Order granting the preliminary injunction contained virtually no analysis of Plaintiff's likelihood of success on the merits, Defendants chose not to challenge the obvious weaknesses of Plaintiff's federal claims. For some inexplicable reason, Defendants did not: (1) seek reconsideration of Judge Owens' Order granting the preliminary injunction; (2) appeal the grant of the preliminary injunction; (3) file a motion to dissolve or modify the preliminary injunction; (4) appeal the denial of any motion to dissolve the preliminary injunction; (5) seek an expedited discovery schedule; or (6) file an expedited motion for summary judgment. While Defendants did request that the Court expedite ruling on its Motion for Summary Judgment, that motion was not filed until November 15, 2007 and did not become ripe for decision until February 15, 2008. Instead, Defendants stood idly by knowing that Plaintiff was actively pursuing his degree in an accelerated manner. In light of Defendant's lack of zeal and the balance of equities in this case, automatic dissolution of the injunction before Plaintiff has an opportunity for appellate review is particularly troubling. Based on the foregoing, the Court stays the dissolution of the preliminary injunction pending appeal.

CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 29) is granted with respect to each of Plaintiff's federal claims. Because this Order disposes of all federal issues related to this case, the Court declines to exercise supplemental

jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice. However, the Court also stays its Order pending appeal, and thus the previously issued preliminary injunction shall remain in full force and effect until modified or dissolved by the Court of Appeals or further order of this Court.

IT IS SO ORDERED, this 30th day of May, 2008.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE